# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL ESPINOZA MENDOZA, | Case No. 1:26-cv-00702-JLT-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH A BOND HEARING BEFORE AN IMMIGRATION JUDGE |
| v. | |
| KRISTI NOEM, et al., | |
| Respondents. | |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Respondents be directed to provide Petitioner with an individualized bond hearing before an immigration judge at which the government must justify Petitioner's continued detention by clear and convincing evidence.

## I.

## BACKGROUND

Petitioner is a citizen of Mexico who entered the United States in 1994.[1] (ECF No. 15 at 21.[2]) Petitioner applied to adjust his status pursuant to section 245(i) of the Immigration and

---

[1] The Form I-213 states that Petitioner admitted to an officer that he last entered the United States in 1994. (ECF No. 15 at 21.) The petition alleges that Petitioner has been in the United States for over 37 years. (ECF No. 1 at 2.)

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

1

Nationality Act ("INA"), and his application was denied in or around April 2025. Petitioner filed a timely appeal in or around May 2025. (ECF No. 1 at 5.)

On June 29, 2025, an administrative warrant for Petitioner's arrest was issued. (ECF No. 15 at 17.) On July 9, 2025, Petitioner was arrested. (ECF No. 1 at 5.) That same day, the Department of Homeland Security ("DHS") issued a notice to appear, charging Petitioner with removability under section 212(a)(6)(A)(i) of the INA. (ECF No. 15 at 10–12.) Petitioner is pursuing relief from removal in the form of cancellation of removal. (ECF No. 1 at 5.) Petitioner "requested a custody redetermination pursuant to 8 C.F.R. § 1236," and on December 15, 2025, an immigration judge ("IJ") denied the request, stating:

> The Court determines that [Petitioner] has not met his burden to show that he has been "waved-through" for purposes of establishing jurisdiction. See Matter of YAJURE HURTADO, 298 I&N Dec. 216 (BIA 2025); Matter of QUILANTAN, 25 I&N Dec. 285 (BIA 2010). Even if the Court did determine that it possessed jurisdiction over [Petitioner]'s request for bond in this case, the Court would independently and additionally determine that Respondent is both a danger and a flight risk.

(ECF No. 15 at 24.)

On January 26, 2026, Petitioner filed a petition for writ of habeas corpus, asserting that his prolonged detention without a bond hearing violates due process and the Eighth Amendment. (ECF No. 1 at 16–17.) On January 29, 2026, Petitioner filed a motion for temporary restraining order ("TRO"), which was denied as untimely. (ECF Nos. 9, 11.) On February 25, 2026, Respondents filed a response, and Petitioner filed a reply on March 3, 2026. (ECF Nos. 15, 16.)

## II.

## DISCUSSION

### A. Immigration Detention Statutes and Bond Hearings

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Here, Respondents are subjecting Petitioner to mandatory detention pursuant to 8 U.S.C. § 1225(b),[3] which the Supreme Court has described as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an

---

[3] "District courts around the country have rejected the government's position that section 1225(b)(2) permits it to pursue mandatory detention against noncitizens who have not been lawfully admitted but have been present in the country for years." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 936 (N.D. Cal. 2025) (citing Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025)). "Respondents acknowledge that the weight of authority is not in their favor in section 1225(b)(2) cases[.]" (ECF No. 15 at 2.) However, the petition does not raise a claim challenging the statutory authority of Petitioner's detention, and "the Court's conclusion in this case is based on the length of [Petitioner]'s detention without a hearing, not the statutory basis for his detention." Doe v. Becerra, 697 F. Supp. 3d. 937, 943 (N.D. Cal. 2023).

> admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged

detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, the Supreme held that the Ninth Circuit misapplied the constitutional avoidance canon to find that §§ 1225(b)(1), (b)(2), and 1226(c) "contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a), which allows for bond hearings in certain circumstances." 583 U.S. at 297–98, 304–305. Jennings also rejected the Ninth Circuit's interpretation of a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

There has been a dearth of guidance regarding the point at which an immigration detainee's continued mandatory detention becomes unconstitutional. See Rodriguez Diaz, 53 F.4th at 1203 (noting that both the Ninth Circuit "and the Supreme Court have repeatedly

declined to decide constitutional challenges to bond hearing procedures in the immigration detention context"). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024).

As noted above, the Supreme Court rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) in Demore. See Demore, 538 U.S. at 514 ("Respondent . . . filed a habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of § 1226(c) *itself.*" (emphasis added)); Black v. Decker, 103 F.4th 133, 149 n.22 (2d Cir. 2024) ("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c)[.]"). In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court expressly preserved the right to bring an as-applied challenge: "Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420. See Black, 103 F.4th at 149 (*Demore* "said nothing about whether due process may *eventually* require a hearing. If *Demore* had, in fact, foreclosed the due process challenge now before us, the *Jennings* Court would have had no reason to remand to the Ninth Circuit 'to consider ... in the first instance' the detainees' argument that '[a]bsent ... a bond-hearing requirement, ... [section 1226(c)] would violate the Due Process Clause of the Fifth Amendment.'" (alterations in original) (quoting Jennings, 583 U.S. at 291, 312)). As noted above, Jennings held the Ninth Circuit erred in finding a *statutory* right to *periodic* bond hearings under § 1225(b) and § 1226(a) but did not address the constitutional arguments.

Based on the foregoing, the Court finds that Petitioner's as-applied constitutional challenge is not foreclosed by Demore or Jennings.

**B. Procedural Due Process**

Courts in the Ninth Circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez, 2019 WL 7491555, at *6 (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the

heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black, 103 F.4th at 147 ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382 (E.D. Cal. May 16, 2025) (applying Mathews test to determine whether due process entitled petitioner to a bond hearing in § 1225(b) context), findings and recommendations adopted, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

In the petition, Petitioner applies a reasonableness test with three main factors (good faith challenge to removal, length of detention, and likelihood detention will continue pending future proceedings) and the Mathews test. (ECF No. 1 at 7–13.) Given that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz, 53 F.4th at 1193, the Court will apply the Mathews test.

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

1. Private Interest

Respondents argue that "Petitioner does not possess the right to freedom from immigration detention in any form other than the form provided by Congress." (ECF No. 15 at 3 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)).) However, Mezei addressed due process rights *with respect to admission*, and here, Petitioner is not raising claims regarding the admission process. See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d

1163, 1171 (W.D. Wash. 2023) ("Defendants ask the Court to extract from Thuraissigiam a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such a conclusion is untethered to the claim in Thuraissigiam and the Court's reasoning. Thuraissigiam's discussion of due process is necessarily constrained to challenges to admissibility to the United States."), appeal filed, No. 24-2801 (9th Cir. argued May 21, 2025).

With respect to the first factor, the Court finds that the private interest at issue here is fundamental. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews*." (quoting Singh, 638 F.3d at 1208)). Accordingly, the first Mathews factor weighs in favor of Petitioner.

2. Risk of Erroneous Deprivation

With respect to the second factor, "[i]n evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

///

Although the Supreme Court has rejected the Ninth Circuit's application of the constitutional avoidance canon and its statutory interpretation of § 1225(b), the Court finds Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127 (9th Cir. 2013), informative regarding the constitutional issues before this Court. The Ninth Circuit "note[d] that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention" because the "parole process is purely discretionary and its results are unreviewable by IJs" and "release decisions are based on humanitarian considerations and the public interest." Rodriguez II, 715 F.3d at 1144. See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1174 (W.D. Wash. 2023) (finding Plaintiffs "allege[d] a viable due process claim" because "the parole process available to them under 8 U.S.C. § 1182(d)(5)(A) is not a constitutionally adequate substitute for a bond hearing particularly since it does not test the necessity of detention," "does not afford the noncitizen an in-person adversarial hearing before a neutral decisionmaker where he or she may present witness testimony or evidence," does not require "the ICE detention officer [to] make any factual findings or provide their reasoning, and there is no apparent right to an administrative appeal").

Petitioner has been detained since July 9, 2025, (ECF No. 1 at 5), a period of eight months, and has not received any bond hearing before a neutral decisionmaker with authority to grant bond. Accordingly, the Court finds that the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards is high. See Jimenez v. Wolf, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) ("[T]he risk of an erroneous deprivation of Landeros Jimenez's liberty interest is high. He has not received any bond or custody redetermination hearing during his one-year detention. Thus, the probable value of additional procedural safeguards—a bond hearing—is high, because Respondents have provided virtually no procedural safeguards at all."). Therefore, the second Mathews factor weighs in favor of Petitioner.

3. Government's Interest

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in

violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

However, it is important to stress that the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz, 2020 WL 1862254, at *7. See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers"). Accordingly, the third Mathews factor weighs in favor of Petitioner.

///

///

In sum, each of the Mathews factors weighs in favor of Petitioner. Accordingly, the undersigned recommends finding that Petitioner is entitled to a bond hearing.[4]

**C. Exhaustion**

Respondents contend in the alternative that Petitioner has failed to exhaust administrative remedies. (ECF No. 15 at 3–4.) Petitioner argues:

> Respondents' arguments are contradictory. First, they claim that Petitioner is subject to mandatory detention, using a case that concludes that the IJ lacks the jurisdiction to hear 1225(b)(2) petitioner bond requests, only to then say that this Court should not grant Petitioner relief because he has not exhausted his remedies with the IJ and the BIA, the very same IJ and BIA that supposedly lack jurisdiction under *Hurtado*.

(ECF No. 16 at 2.)

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional prerequisite, exhaustion can be waived. Id. (citations omitted). "Courts may require prudential exhaustion if":

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, the Court finds that prudential exhaustion can be waived. "[W]here the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the result of

---

[4] In light of this conclusion, the Court declines to address Petitioner's Eighth Amendment claim.

recourse to administrative remedies would be, such recourse would be futile and is not required." El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev., 959 F.2d 742, 747 (9th Cir. 1991) (quoting SAIF Corp./Oregon Ship v. Johnson, 908 F.2d 1434, 1441 (9th Cir. 1990)). "The Court joins the multitude of district courts to consider this issue recently in the context of habeas petitions filed by immigrant detainees and finds 'pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens detained in the United States without admission are "seeking admission" for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.'" Cerro Huerta v. Bondi, No. 1:25-cv-00941-JLT-HBK (HC), 2026 WL 74152, at *3 (E.D. Cal. Jan. 9, 2026) (quoting Singh v. Andrews, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3523057, at *2 (E.D. Cal. Dec. 9, 2025)) (collecting cases). See Prem S. v. Warden of Golden State Annex Det. Facility, No. 1:25-cv-01869-TLN-SCR, 2025 WL 3724854, at *2 (E.D. Cal. Dec. 24, 2025) ("fundamentally disagree[ing]" with government's exhaustion argument because "it is clear any immigration judge and the BIA would accept § 1225(b)(2) applies to Petitioner given the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which upheld the legal interpretation of § 1225(b)(2) that Respondents put forth" and therefore declining to "subject Petitioner to a fruitless exercise where this [is] a predetermined outcome"); Estrada-Samayoa v. Cruz, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *8 (E.D. Cal. Nov. 24, 2025) ("The Court agrees that waiver of petitioner's exhaustion of administrative remedies is appropriate. Petitioner has demonstrated that presentation of his claims to the BIA would be futile in light of the BIA's decision in *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 20025).").

**D. Appropriate Remedy**

Petitioner requests this Court to hold a hearing to determine whether Petitioner's detention is warranted. (ECF No. 1 at 17.) "The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. The Court now turns to the burden of proof at the bond hearing and which party should bear such burden.

///

13

Having "previously applied the canon of constitutional avoidance to interpret . . . immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a statutory right to a bond hearing once detention becomes prolonged," the Ninth Circuit in Singh "concluded that for these hearings to comply with due process, the government had to bear the burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger to the community." Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may have declined to impose the standard articulated in Singh, the panel majority specifically stated that it was not "decid[ing] whether Singh remains good law in any respect following Jennings" and even recognized that Singh was based "on general principles of procedural due process, reasoning that a detained person's liberty interest is substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199. Additionally, the Ninth Circuit has suggested post-Jennings that Singh remains good law in Martinez v. Clark, which took "no position" on "[w]hether due process requires a bond hearing for aliens detained under § 1226(c)," but did address "the scope of federal court review of those bond determinations" and found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." Martinez, 36 F.4th at 1223, 1231. On remand, and after Rodriguez Diaz was decided, the Martinez panel reconfirmed "that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" and "that the BIA applied the correct burden of proof." Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024).

Based on the foregoing, the Court finds that the government must justify Petitioner's continued confinement by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. See A.E. v. Andrews, No. 1:25-CV-00107-KES-SKO (HC), 2025 WL 1808676, at *1 (E.D. Cal. July 1, 2025) (directing respondent "to schedule a bond hearing before an immigration judge . . . wherein respondent must justify petitioner's continued detention by clear and convincing evidence" in § 1225(b) context); Sanchez-Rivera v. Matuszewski, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *7 n.5 (S.D. Cal. Jan. 9, 2023) (following "an

overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community").

Further, in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond, the IJ should consider Petitioner's financial circumstances or alternative conditions of release. See Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ('IJ'), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be granted on the first claim for relief; and

2. Respondents be directed to provide Petitioner with a bond hearing before an immigration judge to be held within THIRTY (30) days that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), at which

   a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203, and

   b. the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.

///

15

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 10, 2026**           /s/ Erin P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE

16